## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

James Dupay,

      Plaintiff,

v.

Equifax Information Services LLC,
BMO Harris Bank, N.A.,
CitiMortgage, Inc., JPMorgan Chase
Bank, N.A., Cenlar FSB and Capital
One Bank (USA), N.A,

      Defendants.

Court No.:


## __COMPLAINT__


## __JURY TRIAL DEMANDED__

---

### INTRODUCTION

1.    The United States Congress has found the banking system is dependent upon

fair and accurate credit reporting.  Inaccurate credit reports directly impair the

efficiency of the banking system, and unfair credit reporting methods

undermine the public confidence, which is essential to the continued

functioning of the banking system. Congress enacted the Fair Credit Reporting

Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting,

promote efficiency in the banking system, and protect consumer privacy.  The

FCRA seeks to ensure consumer reporting agencies exercise their grave

responsibilities with fairness, impartiality, and a respect for the consumer's

right to privacy because consumer reporting agencies have assumed such a

vital role in assembling and evaluating consumer credit and other information

on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2.    The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.   Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3.    James Dupay ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Equifax Information Services LLC ("Equifax"), BMO Harris Bank, N.A. ("BMO"), CitiMortgage, Inc. ("CITI"), JP Morgan Chase Bank, N.A. ("Chase"), Cenlar FSB ("Cenlar"), and Capital One Bank (USA), N.A ("CapOne") (jointly as "Defendants"), with regard to erroneous reports of derogatory credit information to national reporting agencies and Defendants' failure to properly investigate Plaintiff's disputes.

4.    Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

5.    While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6.   Unless otherwise stated, all the conduct engaged in by Defendants took place in Minnesota.

7.   Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8.   Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

9.   Through this complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

10.   Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331.

11.   This Court has federal question jurisdiction because this case arises out of Defendants' violation of federal law—the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA").

12.   Venue is proper pursuant to 28 U.S.C. § 1391 as all the events and omissions giving rise to Plaintiff's claims occurred in Minnesota.

13. Defendants are subject to the Court's personal jurisdiction, as Defendants conduct business within Minnesota, and Defendants' conduct giving rise to this action accrued in Minnesota.

14. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

15. Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein Defendants were the principal, agent (actual or ostensible) or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff or the relief prayed for herein.

## PARTIES

16. Plaintiff is a natural person residing in Anoka County, Minnesota.

17. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

18. Defendant Equifax is an entity doing business in the State of Minnesota.

19. Defendant Equifax's registered agent address is: Corporation Service Company, 2345 Rice Street, Suite 230, Roseville, MN 55113.

20. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and

use interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

21.   Defendant BMO is an entity doing business in the State of Minnesota.

22.   Defendant BMO has its corporate headquarters located at 111 W. Monroe St. Chicago, Illinois 60603.

23.   The creditor named herein, BMO, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

24.   Defendant CITI is an entity doing business in the State of Minnesota.

25.   Defendant CITI's registered agent address is: C T Corporation System Inc., 1010 Dale Street N, St. Paul, MN 55117.

26.   The creditor named herein, CITI, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

27.   Defendant Chase is an entity doing business in the State of Minnesota.

28.   Defendant Chase's registered agent address is: C T Corporation System Inc., 1010 Dale Street N, St. Paul, MN 55117.

29.   The creditor named herein, Chase, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

30.   Defendant Cenlar is an entity doing business in the State of Minnesota.

31.  Defendant Cenlar has its corporate headquarters located at 425 Phillips Boulevard, Trenton, NJ 08618.

32.  The creditor named herein, Cenlar, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

33.  Defendant CapOne is an entity doing business in the State of Minnesota.

34.  Defendant CapOne has its corporate headquarters located at 1680 Capital One Drive, McLean, VA 22102.

35.  The creditor named herein, CapOne, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

36.  Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## FACTUAL ALLEGATIONS

37.  Plaintiff opened different accounts with Defendants BMO, CITI, Chase, Cenlar and CapOne from June 2005 to July 2012.

38.  These accounts were labeled and opened as follows:

   38.1.  BMO Harris Bank, N.A. Account with an account number beginning with 3543*: Opened on April 25, 2012;

38.2. BMO Harris Bank, N.A. Account with an account number beginning with 6078*: Opened on April 25, 2012;

38.3. CitiMortgage Account with an account number beginning with *2002: Opened on June 1, 2005;

38.4. Chase Auto Account with an account number beginning with *11012: Opened on May 3, 2010;

38.5. Cenlar Federal Savings Bank Account with an account number beginning with *3000: Opened on September 4, 2009;

38.6. Capital One Auto Finance Account with an account number beginning with *62062: Opened on February 1, 2008;

39. Plaintiff either transferred/sold or paid the accounts listed in Paragraph 38.

40. All accounts listed in Paragraph 38 are closed.

41. Plaintiff transferred/sold or paid Plaintiff's accounts on the following dates:

41.1. BMO Account 3543*: paid and closed on October 2013;

41.2. BMO Account 6078*: transferred/sold and closed on September 2012;

41.3. CitiMortgage Account *2002 : paid and closed on July 2012;

41.4. Chase Auto Account *11012: paid and closed on May 2012;

41.5. Cenlar Federal Savings Bank Account *3000: transferred/sold and closed on February 2012;

41.6.    Capital One Auto Finance Account with an account number

beginning with *62062: paid and closed on May 2010.

42.   It is illegal and inaccurate for Defendants to report any derogatory collection

information about a loan account that is transferred/sold or paid, and closed.

43.   However, Defendants either reported or caused to be reported inaccurate

information after the Plaintiff has transferred/sold or paid, and closed the

accounts listed in Paragraph 38 and Paragraph 41.

44.   Defendants' reporting derogatory information was inaccurate and misleading in

that Defendants continued reporting information based on Defendants' contract

terms with Plaintiff, which were no longer enforceable upon transfer or payment

of Plaintiff's accounts, thereby rendering the disputed information "inaccurate".

45.   Further still, even if any amount was still outstanding after the closing dates listed

in Paragraph 41, Plaintiff declared bankruptcy on or about March 28, 2018 and

received discharge on or about July 2, 2018; thus, any debt still existing would

have been discharged in bankruptcy.

46.   Additionally, Defendants' inaccurate reporting did not comply with the

Consumer Data Industry Association's Metro 2 reporting standards, which

provides guidance for credit reporting and FCRA compliance.

47.   The Consumer Data Industry Association ("CDIA") publishes the Metro 2

("Metro 2") reporting standards to assist furnishers with their compliance

requirements under the FCRA.

48. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

49. On information and belief, Defendants adopted and at all times relevant implemented the Metro 2 format.

50. On information and belief, Defendants adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

51. Despite Metro 2 Format's instructions, Defendants failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts.

52. To this end, the adverse reporting on the Plaintiff's report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

53. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

*Equifax and BMO's Inaccurate Reporting*

54.  In Plaintiff's credit report from Equifax dated sometime before December 14, 2018, Equifax and BMO inaccurately reported that Plaintiff had scheduled payment amounts of two separate accounts.

55.  Specifically, Plaintiff had the following accounts (the "BMO Accounts") reporting scheduled payments amounts:

   55.1.   BMO Harris Bank Account: 3543* - Closed: 10/2013 - Scheduled payment amount: $228

   55.2.   BMO Harris Bank Account: 6078* - Not Listed as Closed - Scheduled payment amount: $228

56.  This was inaccurate since the BMO Accounts had balances of $0, so it would be impossible for Plaintiff to have the scheduled payment amounts listed in Paragraph 55.

57.  Plaintiff had already paid and closed the BMO Account listed in Paragraph 55.1 on October 2013, so it would be impossible for Plaintiff to have scheduled payment amounts due on the BMO Account listed in Paragraph 55.1.

58.  Further, the BMO Account listed in Paragraph 55.2 was transferred/sold and closed on September 2012, so it would be impossible for Plaintiff to have scheduled payment amounts due on the BMO Account listed in Paragraph 55.2.

59.  It was therefore inaccurate for Equifax and BMO to report that Plaintiff had the scheduled payment amounts listed in Paragraph 55.

### *Equifax and CITI's Inaccurate Reporting*

60.   In Plaintiff's credit report from Equifax dated sometime before December 14, 2018, Equifax and CITI inaccurately reported that Plaintiff had a scheduled payment amount reporting $843 on the CITI account listed in Paragraph 38.3 (the "CITI Account").

61.   This was inaccurate since the CITI Account had a balance of $0, so it would be impossible for Plaintiff to have scheduled payment amounts of $843 on the CITI Account.

62.   Further, Plaintiff had already paid and closed the CITI Account on July 2012, so it would be impossible for Plaintiff to have a scheduled payment amount of $843 on the CITI Account.

63.   It was therefore inaccurate for Equifax and CITI to report that Plaintiff a scheduled payment amount of $843 on the CITI Account.

### *Equifax and Chase's Inaccurate Reporting*

64.   In Plaintiff's credit report from Equifax dated sometime before December 14, 2018, Equifax and Chase inaccurately reported that Plaintiff had a scheduled payment amount of $287 on the Chase account listed in Paragraph 38.4 (the "Chase Account").

65.   This was inaccurate since the Chase Account had a balance of $0, so it would be impossible for Plaintiff to have a scheduled payment amount of $287 on the Chase Account.

66. Further, Plaintiff had already paid and closed the Chase Account in May 2012, so it would be impossible for Plaintiff to have a scheduled payment amount of $287 on the paid and closed  Chase Account.

67. It was therefore inaccurate for Equifax and Chase to report that Plaintiff a scheduled payment amount of $287 on the Chase Account.

### *Equifax and Cenlar's Inaccurate Reporting*

68. In Plaintiff's credit report from Equifax dated sometime before December 14, 2018, Equifax and Cenlar inaccurately reported that Plaintiff had a scheduled payment amount of $71 on the Cenlar account listed in Paragraph 38.5 (the "Cenlar Account").

69. This was inaccurate since the Cenlar Account had a balance of $0, so it would be impossible for Plaintiff to have a scheduled payment amount of $71 on the Cenlar Account.

70. Further, the Cenlar Account was transferred/sold and closed on or about May 2012, so it would be impossible for Plaintiff to have a scheduled payment amount of $71 on the transferred/sold and closed Cenlar Account.

71. It was therefore inaccurate for Equifax and Chase to report that Plaintiff had a scheduled payment amount of $71 on the Cenlar Account.

### *Equifax and CapOne's Inaccurate Reporting*

72. In Plaintiff's credit report from Equifax dated sometime before December 14, 2018, Equifax and CapOne inaccurately reported that Plaintiff had a

scheduled payment amount of $193 on a CapOne account listed in Paragraph 38.6 (the "CapOne Account").

73.   This was inaccurate since CapOne Account had a balance of $0, so it would be impossible for Plaintiff to have a scheduled payment amount of $193 on the CapOne Account.

74.   Further, Plaintiff had already paid and closed the CapOne Account in May 2010, so it would be impossible for Plaintiff to have a scheduled payment amount of $193 on the paid and closed CapOne Account..

75.   It was therefore inaccurate for Equifax and CapOne to report that Plaintiff a scheduled payment amount of $193 on the CapOne Account.

### *Re-Reporting Inaccurate Information After Dispute*

76.   On or after December 14, 2018, Plaintiff disputed Equifax's reporting regarding the BMO Accounts, CITI Account, Chase Account, Cenlar Account and CapOne Account pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information.

77.   Specifically, Plaintiff sent a letter to Equifax, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected as to the BMO Accounts, CITI Account, Chase Account, Cenlar Account, and CapOne Account.

78.   Equifax was required to conduct a reinvestigation into this specific debt on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

79. Upon information and belief, Equifax notified BMO, CITI, Chase, Cenlar, and CapOne of Plaintiff's dispute.

80. A reasonable investigation by BMO and Equifax would have indicated that they were reporting the BMO Accounts inaccurately.

81. A reasonable investigation by CITI and Equifax would have indicated that they were reporting the CITI Account inaccurately.

82. A reasonable investigation by Chase and Equifax would have indicated that they were reporting the Chase Account inaccurately.

83. A reasonable investigation by Cenlar and Equifax would have indicated that they were reporting the Cenlar Account inaccurately.

84. A reasonable investigation by CapOne and Equifax would have indicated that they were reporting the CapOne Account inaccurately.

85. Instead, upon information and belief, Defendants re-reported that Plaintiff had a scheduled payment amounts on the BMO Accounts, CITI Account, Chase Account, Cenlar Account, and CapOne Account.

86. Specifically, BMO and Equifax re-reported on the BMO Accounts that Plaintiff had the scheduled payment amounts listed in Paragraph 55.

87. Specifically, CITI and Equifax re-reported that Plaintiff had a scheduled payment amount of $843 on the CITI Account.

88. Specifically, Chase and Equifax re-reported that Plaintiff had a scheduled payment amount of $287 on the Chase Account.

89. Specifically, Cenlar and Equifax re-reported that Plaintiff had a scheduled payment amount of $71 on the Cenlar Account.

90. Specifically, CapOne and Equifax re-reported that Plaintiff had a scheduled payment amount of $193 on the CapOne Account.

91. Defendants, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i.

92. Defendants failed to review all relevant information provided by Plaintiff in the dispute to Defendants, as required by and in violation of 15 U.S.C. § 1681i.

93. Due to Defendants failure to reasonably investigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i.

94. Defendants' continued inaccurate and negative reporting of the BMO Accounts, CITI Account, Chase Account,   Cenlar Account, and CapOne Account in light of their knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

95. Also as a result of Defendants continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness and emotional distress.

96. By inaccurately reporting account information after notice and confirmation of its errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i.

## FIRST CAUSE OF ACTION
## THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681 *ET SEQ.* (FCRA)

97. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

98. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

99. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

100. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. §1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from Defendants.

## REQUEST FOR JURY TRIAL

101. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial be jury.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful and an invasion of privacy;

2. Plaintiff's actual damages;

3. Statutory damages of not less than $100 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), against each Defendant;

4. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n(a)(3), against Defendants; and

5. Any other relief the Court may deem just and proper.

**HYDE & SWIGART**

Date: March 7, 2019

By:/s/ Anthony Chester
Anthony P. Chester (Bar No. 0396929)
Robert L. Hyde (Bar No. 035109X)
**HYDE & SWIGART**
120 South 6th Street, Suite 2050
Minneapolis, MN 55402
Telephone:   (952) 225-5333
Facsimile:   (800) 635-6425
Email: tony@westcoastlitigation.com

*Attorneys for James Dupay*